**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **SMARTFLASH LLC and** | § | |
| **SMARTFLASH TECHNOLOGIES** | § | |
| **LIMITED** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 6:13-cv-448** |
| | § | |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA,** | § | |
| **INC., SAMSUNG** | § | |
| **TELECOMMUNICATIONS AMERICA,** | § | |
| **LLC, HTC CORPORATION, HTC** | § | |
| **AMERICA, INC., EXEDEA, INC. and** | § | |
| **GAME CIRCUS LLC** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Smartflash LLC and Smartflash Technologies Limited file this Original

Complaint against Defendants Samsung Electronics Co., Ltd., Samsung Electronics America,

Inc., Samsung Telecommunications America, LLC, HTC Corporation, HTC America, Inc.,

Exedea, Inc., and Game Circus LLC for patent infringement under 35 U.S.C. § 271 and allege,

based on their own personal knowledge with respect to their own actions and based upon

information and belief with respect to all others' actions, as follows:

**THE PARTIES**

1.    Plaintiff Smartflash LLC is a limited liability corporation organized and existing under

the laws of the State of Texas, and maintains its principal place of business at 100 E.

Ferguson, Suite 406, Tyler, Texas, 75702.  Smartflash LLC maintains a website at

www.smartflashllc.com.

2.     Plaintiff Smartflash Technologies Limited is a limited company organized and existing under the laws of the British Virgin Islands, and maintains a principal place of business on the island of Tortola.

3.     Defendant Samsung Electronics Co. Ltd. ("Samsung Korea") is a Korean corporation, with a principal place of business at Samsung Electronics Building, 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857, South Korea.

4.     Samsung Electronics America, Inc. ("Samsung New Jersey") is a New York corporation with a principal place of business is located at 105 Challenger Road, Ridgefield Park, NJ 07660.  Samsung Electronics America, Inc. has designated CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

5.     Defendant Samsung Telecommunications America, LLC ("Samsung Richardson")[1] is a Delaware corporation, with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082.  Samsung Richardson has designated Corporation Service Company 211 E. 7th Street, Suite 620 Austin, Texas 78701 as its agent for service of process.

6.     Defendant HTC Corporation ("HTC Taiwan") is a corporation organized and existing under the laws of Taiwan, with its principal place of business headquarters at 23 Xinghua Road, Taoyuan 330, Taiwan.

7.     Defendant HTC America, Inc. ("HTC America") is a subsidiary of Defendant HTC Corporation and is a corporation organized and existing under the laws of the state of Washington with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005.  HTC America, Inc. has designated National Registered

---

[1]   When not identified separately, Samsung Korea, Samsung New Jersey and Samsung Richardson are collectively referred to herein as "Samsung."

Agents, Inc., 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process.

8.    Defendant Exedea, Inc. ("Exedea")[2] was incorporated in the State of Texas on December 28, 2004 and was dissolved on December 30, 2011.  Exedea, Inc. was a subsidiary of HTC (B.V.I.) Corp., which is a subsidiary of HTC Corp.  In its existence, Exedea, Inc. listed 5950 Corporate Drive, Houston, Texas 77036 as its principal place of business.  Exedea, Inc. has designated HTC USA Inc., 5950 Corporate Dr., Houston, TX 77036 as its agent for service of process.

9.    Defendant Game Circus LLC ("Game Circus") is a limited liability corporation organized and existing under the laws of the State of Texas with a principal place of business at 15400 Knoll Trail Drive, Suite 230, Dallas, Texas 75248.  Game Circus has designated Kim L. Lawrence, 5720 LBJ Freeway, Suite 470, Dallas, Texas 75240 as its agent for service of process.

## JURISDICTION AND VENUE

10.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.    This Court has personal jurisdiction over Samsung, HTC and Game Circus ("Defendants").  Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this district and/or have contributed to patent infringement by others in this district, the State of Texas, and elsewhere in the United States.

---

[2]  When not identified separately, HTC Taiwan, HTC America, and Exedea are collectively referred to herein as "HTC."

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, the Defendants are subject to personal jurisdiction in this district, the Defendants have regularly conducted business in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

## **PATENTS-IN-SUIT**

13.     On February 26, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,334,720 (the "'720 patent") entitled "Data Storage and Access Systems."

14.     On May 17, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,942,317 (the "'317 patent") entitled "Data Storage and Access Systems."

15.     On October 11, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,033,458 (the "'458 patent") entitled "Data Storage and Access Systems."

16.     On November 22, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,061,598 (the "'598 patent") entitled "Data Storage and Access Systems."

17.     On February 21, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,118,221 (the "'221 patent") entitled "Data Storage and Access Systems."

18.     On December 25, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,336,772 (the "'772 patent") entitled "Data Storage and Access Systems."

19.    Smartflash LLC, together with Smartflash Technologies Limited,[3] owns all rights, title, and interest in and to the '720, '317, '458, '598, '221, and '772 patents (the "patents-in-suit") and possesses all rights of recovery.

20.    Smartflash incorporates the patents-in-suit herein by reference.

## FACTUAL ALLEGATIONS

21.    The patents-in-suit generally cover a portable data carrier for storing data and managing access to the data via payment information and/or use status rules.  The patents-in-suit also generally cover a computer network (i.e., a server network) that serves data and manages access to data by, for example, validating payment information.

22.    In or around the beginning of 2002, Patrick Racz, one of the co-inventors of the patents-in-suit, collaborated with Britney Spears to commercialize the technology covered by the patents-in-suit.

23.    Mark Steverson, one of Ms. Spears' lawyers, was involved in these commercialization efforts.

24.    Mr. Steverson contacted Samsung Richardson and eventually gave a presentation to Samsung Richardson about the technology covered by the patents-in-suit and Mr. Racz's plans to continue developing the technology for reader player devices and cell phones.

25.    Smartflash's patent application 2006/0118619 was cited as prior art during the prosecution of Samsung's U.S. Patent No. 7,392,292.

26.    Smartflash's patent application 2004/0111601 was cited as prior art during the prosecution of Samsung's U.S. Patent No. 8,327,148.

---

[3]  Smartflash Technologies Limited joins as a co-plaintiff in this lawsuit only to avoid a dispute as to whether it should be added for standing purposes.

27.    The Google Play app (formerly known as the Android Market app) is an Android application that supports the purchase and download of applications and other digital content from Google Play (formerly known as the Android Market).

28.    Samsung's Media Hub app is an application that supports the purchase and download of video and music from Samsung's Media Hub and Music Hub, respectively.

29.    Samsung sells and delivers digital content through its Media Hub and Music Hub.

30.    Samsung's end-user customers can use the Google Play Store app on their Android-based Samsung devices, such as the Galaxy, to purchase and download applications, music, video, and other digital content.

31.    Samsung also operates Samsung Apps, which is an application store for Samsung devices (e.g., phones, tablets, Smart TVs and Blu-ray players) where end-user customers can download or purchase applications.

32.    HTC's end-user customers can use the Google Play Store app on their portable, Android-based HTC devices, such as HTC's One series of phones, to purchase and download applications, music, video, and other digital content.

33.    An application developer or publisher can use the Android in-application payment functionality to collect payment for enhanced functionality or additional content usable by the application.

34.    The Android in-application payment functionality is available through the Google Play services APK and, in operation, is exposed by the Google Play app.

35.    An Android application can call the Android in-application payment functionality to convey payment requests and responses.

36.   The Google Play app, in turn, conveys the payment requests and responses to one or more Google Play servers for payment approval.

37.   When payment is approved, the Android app receives a purchase token which identifies the transaction and contains a signature of the purchase.

38.   Game Circus sells apps through Google Play and develops apps that are sold through Google Play.

39.   Game Circus sells and develops apps, such as "Coin Dozer – Halloween," that use Android in-application payment functionality to collect payment for enhanced functionality or additional content.

40.   Samsung has committed and continues to commit acts of infringement under 35 U.S.C. § 271 (i) with any version of its Media Hub app; (ii) with any version of the Google Play app; (iii) with any version of any Android-based Samsung hardware or software product (e.g., Samsung's various smartphone products, Samsung's various tablet products, other computer devices, etc.) that includes any version of the Google Play app or that includes any version of its Media Hub app; (iv) with Samsung's internal servers involved in operating Samsung's Media, Music Hubs, Samsung Apps, Internet@TV or Smart Hub; and (v) with any model of Samsung's Smart TVs and Blu-ray players that enables or provides functionality (e.g., Internet@TV, Smart Hub, or Samsung Apps) to allow end-user customers to download or purchase apps or that enables or provides functionality (e.g., the Vudu or Netflix apps) to allow end-user customers to download or purchase digital content (collectively referred to as "Samsung's Accused Instrumentalities").  In committing these acts of infringement, Samsung acted despite an objectively high likelihood that its actions constituted

infringement of at least one valid patent, and Samsung actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

41.     HTC has committed and continues to commit acts of infringement under 35 U.S.C. § 271 (i) with any version of the Google Play app; and (ii) with any version of any Android-based HTC hardware or software product (e.g., HTC's various smartphone products, HTC's various tablet products, etc.) that includes any version of the Google Play app (collectively referred to as "HTC's Accused Instrumentalities").

42.     Game Circus has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with its apps that run on Samsung and/or HTC devices and use Android's in-application payment functionality to collect payment for enhanced functionality or additional content.

43.     Defendants are jointly and severally liable for Game Circus's acts of infringement listed above.

44.     The Defendants' acts of infringement listed above are with respect to or arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

45.     Questions of fact common to all Defendants exist and will arise in this action.

## COUNT ONE: PATENT INFRINGEMENT BY SAMSUNG ELECTRONICS CO., LTD.

46.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

47.     As described below, Samsung Korea has infringed and continues to infringe the patents-in-suit.

48.     Samsung's Accused Instrumentalities meet claims of the patents-in-suit.

49.     Samsung Korea offers to sell, sells and/or imports Samsung's Accused Instrumentalities within the United States or into the United States without authority from Plaintiffs.

50.     Samsung Korea therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

51.     Samsung Korea has actual knowledge of the patents-in-suit.

52.     Samsung Korea indirectly infringes the patents-in-suit by inducing infringement by others, such as resellers, app developers and publishers, digital content publishers, and end-user customers, by, for example, requiring resellers to import Samsung's Accused Instrumentalities into the United States, by encouraging resellers to sell and offer to sell Samsung's Accused Instrumentalities within the United States, by instructing and encouraging app developers and publishers and digital content publishers to sell and offer to sell digital content and applications in the United States through Samsung's Accused Instrumentalities, and by instructing end-user customers to install and use Samsung's Accused Instrumentalities in the United States.

53.     Samsung Korea took the above actions intending to cause infringing acts by others.

54.     Samsung Korea was aware of the patents-in-suit and knew that the others' actions, if taken, would constitute infringement of those patents.  Alternatively, Samsung Korea believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions.  Samsung Korea therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

55.     Samsung Korea indirectly infringes the patents-in-suit by contributing to infringement by others, such as resellers, app developers and publishers, digital content publishers, and end-user customers by offering to sell and/or selling within the United States products

that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components responsible for purchasing of digital content or applications from or using Samsung's Media Hub, Samsung's Music Hub, Samsung Apps, Internet@TV, Smart Hub, or Google Play, the software components responsible for providing digital content or applications upon payment validation, the software components that provide in-application payment functionality, and the software components that install any version of Android that includes the Google Play app, any version of the Samsung Media Hub app, any version of the software that enables end-users to download or purchase apps using Internet@TV, Smart Hub or Samsung Apps or enables end-users to download or purchase digital content, or any version of Android's in-application payment functionality on a Samsung computer (including smartphones, tablets and other devices).

56.     In the above offering to sell and/or selling, Samsung Korea has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Alternatively, Samsung Korea believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions.  Samsung Korea therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

57.     Samsung Korea's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are

entitled to recover from Samsung Korea the damages sustained by Plaintiffs as a result of

Samsung Korea's wrongful acts in an amount subject to proof at trial.  In addition, the

infringing acts and practices of Samsung Korea have caused, are causing, and, unless

such acts and practices are enjoined by the Court, will continue to cause immediate and

irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which

Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

58.     Samsung Korea has committed and continues to commit acts of infringement under

35 U.S.C. § 271 with the Samsung Accused Instrumentalities.  In committing these acts

of infringement, Samsung Korea acted despite an objectively high likelihood that its

actions constituted infringement of at least one valid patent, and Samsung Korea actually

knew or should have known that its actions constituted an unjustifiably high risk of

infringement of at least one valid and enforceable patent.

59.     Samsung Korea's infringement of the patents-in-suit has been and continues to be willful.

60.     To the extent that Samsung Korea releases any new version of Samsung's Accused

Instrumentalities, such instrumentalities meet claims of the patents-in-suit and infringe 35

U.S.C. § 271(a)-(c) in ways analogous to Samsung Korea's current infringement

described above.

## COUNT TWO: PATENT INFRINGEMENT
## BY SAMSUNG ELECTRONICS AMERICA, INC.

61.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

62.     As described below, Samsung New Jersey has infringed and continues to infringe the

patents-in-suit.

63.     Samsung's Accused Instrumentalities meet claims of the patents-in-suit.

64.     Samsung New Jersey uses, offers to sell, sells and/or imports Samsung's Accused

Instrumentalities within the United States or into the United States without authority from

Plaintiffs.

65.     Samsung New Jersey therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

66.     Samsung New Jersey has actual knowledge of the patents-in-suit.

67.     Samsung New Jersey indirectly infringes the patents-in-suit by inducing infringement by

others, such as resellers, app developers and publishers, digital content publishers, and

end-user customers, by, for example, requiring resellers to import Samsung's Accused

Instrumentalities into the United States, by encouraging resellers to sell and offer to sell

Samsung's Accused Instrumentalities within the United States, by instructing and

encouraging app developers and publishers and digital content publishers to sell and offer

to sell digital content and applications in the United States through Samsung's Accused

Instrumentalities, and by instructing end-user customers to install and use Samsung's

Accused Instrumentalities in the United States.

68.     Samsung New Jersey took the above actions intending to cause infringing acts by others.

69.     Samsung New Jersey was aware of the patents-in-suit and knew that the others' actions,

if taken, would constitute infringement of those patents.  Alternatively, Samsung New

Jersey believed there was a high probability that others would infringe the patents-in-suit

but remained willfully blind to the infringing nature of others' actions.  Samsung New

Jersey therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

70.     Samsung New Jersey indirectly infringes the patents-in-suit by contributing to

infringement by others, such as resellers, app developers and publishers, digital content

publishers, and end-user customers by offering to sell and/or selling within the United

States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components responsible for purchasing of digital content or applications from or using Samsung's Media Hub, Samsung's Music Hub, Internet@TV, Smart Hub, Samsung Apps or Google Play, the software components responsible for providing digital content or applications upon payment validation, the software components that provide in-application payment functionality, and the software components that install any version of Android that includes the Google Play app, any version of the Samsung Media Hub app, any version of the software that enables end-users to download or purchase apps using Internet@TV, Smart Hub, or Samsung Apps or enables end-users to download or purchase digital content, or any version of Android's in-application payment functionality on a Samsung computer (including smartphones, tablets or other devices).

71.     In the above offering to sell and/or selling, Samsung New Jersey has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Alternatively, Samsung New Jersey believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions.  Samsung New Jersey therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

72.     Samsung New Jersey's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from Samsung New Jersey the damages sustained by Plaintiffs as a result of Samsung New Jersey's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Samsung New Jersey have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

73.     Samsung New Jersey has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with the Samsung Accused Instrumentalities.  In committing these acts of infringement, Samsung New Jersey acted despite an objectively high likelihood that its actions constituted infringement of at least one valid patent, and Samsung New Jersey actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

74.     Samsung New Jersey's infringement of the patents-in-suit has been and continues to be willful.

75.     To the extent that Samsung New Jersey releases any new version of Samsung's Accused Instrumentalities, such instrumentalities meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Samsung New Jersey's current infringement described above.

## COUNT THREE: PATENT INFRINGEMENT BY SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

76.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

77.     As described below, Samsung Richardson has infringed and continues to infringe the patents-in-suit.

78.     Samsung's Accused Instrumentalities meet claims of the patents-in-suit.

79.     Samsung Richardson uses, offers to sell, sells and/or imports Samsung's Accused

Instrumentalities within the United States or into the United States without authority from

Plaintiffs.

80.     Samsung Richardson therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

81.     Samsung Richardson has actual knowledge of the patents-in-suit.

82.     Samsung Richardson indirectly infringes the patents-in-suit by inducing infringement by

others, such as resellers, app developers and publishers, digital content publishers, and

end-user customers, by, for example, requiring resellers to import Samsung's Accused

Instrumentalities into the United States, by encouraging resellers to sell and offer to sell

Samsung's Accused Instrumentalities within the United States, by instructing and

encouraging app developers and publishers and digital content publishers to sell and offer

to sell digital content and applications in the United States through Samsung's Accused

Instrumentalities, and by instructing end-user customers to install and use Samsung's

Accused Instrumentalities in the United States.

83.     Samsung Richardson took the above actions intending to cause infringing acts by others.

84.     Samsung Richardson was aware of the patents-in-suit and knew that the others' actions, if

taken, would constitute infringement of those patents.  Alternatively, Samsung

Richardson believed there was a high probability that others would infringe the patents-

in-suit but remained willfully blind to the infringing nature of others' actions.  Samsung

Richardson therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

85.     Samsung Richardson indirectly infringes the patents-in-suit by contributing to

infringement by others, such as resellers, app developers and publishers, digital content

publishers, and end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components responsible for purchasing of digital content or applications from or using Samsung's Media Hub, Samsung's Music Hub, Samsung Apps, or Google Play, the software components responsible for providing digital content or applications upon payment validation, the software components that provide in-application payment functionality, and the software components that install any version of Android that includes the Google Play app, any version of the Samsung Media Hub app, any version of the software that enables end-users to download or purchase apps using Internet@TV, Smart Hub or Samsung Apps or enables end-users to download or purchase digital content, or any version of Android's in-application payment functionality on a Samsung computer (including smartphones and tablets).

86.    In the above offering to sell and/or selling, Samsung Richardson has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Alternatively, Samsung Richardson believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions.  Samsung Richardson therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

87.   Samsung Richardson's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from Samsung Richardson the damages sustained by Plaintiffs as a result of Samsung Richardson's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Samsung Richardson have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

88.   Samsung Richardson has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with the Samsung Accused Instrumentalities.  In committing these acts of infringement, Samsung Richardson acted despite an objectively high likelihood that its actions constituted infringement of at least one valid patent, and Samsung Richardson actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

89.   Samsung Richardson's infringement of the patents-in-suit has been and continues to be willful.

90.   To the extent that Samsung Richardson releases any new version of Samsung's Accused Instrumentalities, such instrumentalities meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Samsung Richardson's current infringement described above.

## COUNT FOUR: PATENT INFRINGEMENT
## BY HTC CORPORATION

91.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

92.   As described below, HTC Taiwan has infringed and continues to infringe the patents-in-suit.

93.    HTC's Accused Instrumentalities meet claims of the patents-in-suit.

94.    HTC Taiwan offers to sell, sells and/or imports HTC's Accused Instrumentalities within the United States or into the United States without authority from Plaintiffs.

95.    HTC Taiwan therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

96.    HTC Taiwan has actual knowledge of the patents-in-suit.

97.    HTC Taiwan indirectly infringes the patents-in-suit by inducing infringement by others, such as resellers, app developers and publishers, digital content publishers, and end-user customers, by, for example, requiring resellers to import HTC's Accused Instrumentalities into the United States, by encouraging resellers to sell and offer to sell HTC's Accused Instrumentalities within the United States, by instructing and encouraging app developers and publishers and digital content publishers to sell and offer to sell digital content and applications in the United States through HTC's Accused Instrumentalities, and by instructing end-user customers to install and use HTC's Accused Instrumentalities in the United States.

98.    HTC Taiwan took the above actions intending to cause infringing acts by others.

99.    HTC Taiwan is aware of the patents-in-suit and knows that the others' actions, if taken, would constitute infringement of those patents.  Alternatively, HTC Taiwan believes there was a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions.  HTC Taiwan therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

100.   HTC Taiwan indirectly infringes the patents-in-suit by contributing to infringement by others, such as resellers, app developers and publishers, digital content publishers, and end-user customers by offering to sell and/or selling within the United States products

that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components responsible for purchasing of digital content or applications from Google Play, the software components responsible for providing digital content or applications upon payment validation, the software components that provide in-application payment functionality, and the software components that install any version of Android that includes the Google Play app or any version of Android's in-application payment functionality on a HTC computer (including smartphones and tablets).

101.   In the above offering to sell and/or selling, HTC Taiwan knows these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Alternatively, HTC Taiwan believes there is a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions.  HTC Taiwan therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

102.   HTC Taiwan's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from HTC Taiwan the damages sustained by Plaintiffs as a result of HTC Taiwan's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of HTC Taiwan have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and

irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which

Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

103.  To the extent that HTC Taiwan releases any new version of HTC's Accused

Instrumentalities, such instrumentalities meet claims of the patents-in-suit and infringe 35

U.S.C. § 271(a)-(c) in ways analogous to HTC Taiwan's current infringement described

above.

**COUNT FIVE: PATENT INFRINGEMENT
BY HTC AMERICA, INC.**

104.  Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

105.  As described below, HTC America has infringed and continues to infringe the patents-in-
suit.

106.  HTC's Accused Instrumentalities meet claims of the patents-in-suit.

107.  HTC America uses, offers to sell, sells and/or imports HTC's Accused Instrumentalities

within the United States or into the United States without authority from Plaintiffs.

108.  HTC America therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

109.  HTC America has actual knowledge of the patents-in-suit.

110.  HTC America indirectly infringes the patents-in-suit by inducing infringement by others,

such as resellers, app developers and publishers, digital content publishers, and end-user

customers, by, for example, requiring resellers to import HTC's Accused

Instrumentalities into the United States, by encouraging resellers to sell and offer to sell

HTC's Accused Instrumentalities within the United States, by instructing and

encouraging app developers and publishers and digital content publishers to sell and offer

to sell digital content and applications in the United States through HTC's Accused

Instrumentalities, and by instructing end-user customers to install and use HTC's

Accused Instrumentalities in the United States.

111. HTC America took the above actions intending to cause infringing acts by others.

112. HTC America is aware of the patents-in-suit and knows that the others' actions, if taken, would constitute infringement of those patents.  Alternatively, HTC America believes there is a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions.  HTC America therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

113. HTC America indirectly infringes the patents-in-suit by contributing to infringement by others, such as resellers, app developers and publishers, digital content publishers, and end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components responsible for purchasing of digital content or applications from Google Play, the software components responsible for providing digital content or applications upon payment validation, the software components that provide in-application payment functionality, and the software components that install any version of Android that includes the Google Play app or any version of Android's in-application payment functionality on a HTC computer (including smartphones and tablets).

114.   In the above offering to sell and/or selling, HTC America knows these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Alternatively, HTC America believes there is a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions.  HTC America therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

115.   HTC America's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from HTC America the damages sustained by Plaintiffs as a result of HTC America's wrongful acts in an amount subject to proof at trial.  In addition, the infringing and practices of HTC America have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

116.   To the extent that HTC America releases any new version of HTC's Accused Instrumentalities, such instrumentalities meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to HTC America's current infringement described above.

## COUNT SIX: PATENT INFRINGEMENT BY EXEDEA, INC.

117.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

118.   As described below, Exedea has infringed the patents-in-suit.

119.   HTC's Accused Instrumentalities meet claims of the patents-in-suit.

120.   Exedea's sole function within the HTC corporate structure was to take title to imported phones from overseas before transferring them to a third-party distribution center in Indiana.

121.   Exedea therefore infringed the patents-in-suit under 35 U.S.C. § 271(a).

122.   Exedea's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from Exedea the damages sustained by Plaintiffs as a result of Exedea's wrongful acts in an amount subject to proof at trial.

**COUNT SEVEN: PATENT INFRINGEMENT BY GAME CIRCUS LLC**

123.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

124.   As described below, Game Circus has infringed and continues to infringe the patents-in-suit.

125.   Game Circus's apps that use Android's in-application payment functionality to collect payment for enhanced functionality or additional content meet claims of the patents-in-suit.

126.   Game Circus makes, uses, offers to sell, sells and/or imports apps that require payment and apps that use Android's in-application payment functionality to collect payment for enhanced functionality or additional content within the United States or into the United States without authority from Plaintiffs.

127.   Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

128.   Game Circus has actual knowledge of the patents-in-suit.

129.   Game Circus indirectly infringes the patents-in-suit by inducing infringement by its end-user customers to install and use apps that use Android's in-application payment

functionality to collect payment for enhanced functionality or additional content within the United States.

130.    Game Circus took the above actions intending to cause infringing acts by others.

131.    Game Circus is aware of the patents-in-suit and knows that the others' actions, when taken, constitute infringement of those patents.  Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

132.    Game Circus indirectly infringes the patents-in-suit by contributing to infringement by its end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components that provide or call in-application payment functionality and the software components that install apps that use Android's in-application payment functionality to collect payment for enhanced functionality or additional content.

133.    In the above offering to sell and/or selling, Game Circus has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

134.    To the extent that Game Circus releases any other app that uses Android's in-application payment functionality to collect payment for enhanced functionality or additional

content, such apps meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c)

in ways analogous to Game Circus's current infringement described above.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all issues so triable.

## PRAYER FOR RELIEF

1. A judgment that the Defendants have directly infringed the patents-in-suit, contributorily infringed the patents-in-suit, and/or induced the infringement of the patents-in-suit;

2. A preliminary and permanent injunction preventing the Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the patents-in-suit;

3. A judgment that Samsung's infringement of the patents-in-suit has been willful;

4. A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Plaintiffs its attorneys' fees incurred in prosecuting this action;

5. A judgment and order requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and enhanced damages for willful infringement as provided by 35 U.S.C. § 284;

6. A judgment and order requiring Defendants to pay Plaintiffs the costs of this action (including all disbursements);

7. A judgment and order requiring Defendants to pay Plaintiffs pre-judgment and post-judgment interest on the damages awarded;

8. A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Plaintiffs be awarded a compulsory ongoing licensing fee; and

9. Such other and further relief as the Court may deem just and proper.

Dated: May 29, 2013

Respectfully submitted,

**CALDWELL CASSADY & CURRY**

Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
Email:  dpearson@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
Email:  hhamad@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
1717 McKinney, Suite 700
Dallas, Texas 75202
Telephone: (214) 810-4705

T. John Ward
Texas State Bar No. 20848000
Email: tjw@wsfirm.com
T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@wsfirm.com
**WARD & SMITH LAW FIRM**
P.O. Box 1231
1127 Judson Road, Suite 220
Longview, Texas 75606
Telephone:  (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFFS
SMARTFLASH LLC AND
SMARTFLASH TECHNOLOGIES
LIMITED**