IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| SMARTFLASH LLC, et al., | § | |
| --- | --- | --- |
| Plaintiffs, | § § § | |
| v. | § | CASE NO. 6:13-CV-447-JRG-KNM |
| APPLE, INC., et al., | § § § | |
| Defendants. | § § § | |

| SMARTFLASH LLC, et al., | § § | |
| --- | --- | --- |
| Plaintiffs, | § § § | |
| v. | § | CASE NO. 6:13-CV-448-JRG-KNM |
| SAMSUNG ELECTRONICS CO. LTD, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Exclude Robert Mills Expert Opinion Testimony (6:13CV447, Doc. No 279; 6:13CV448, Doc. No 329) and Expert Opinion Testimony Related to Surveys (6:13CV447, Doc. No 280; 6:13CV448, Doc. No. 330) Pursuant To Federal Rules of Evidence 403 and 702.[1] For the reasons set forth below, the Motions to Exclude Robert Mills Opinion are **GRANTED-IN-PART** and **DENIED-IN-PART**, and the Motions to Exclude Opinion Testimony Related to Surveys are **DENIED**.

---

[1] Game Circus LLC originally joined on these Motions, but filed Joint Stipulations of Dismissal with Plaintiffs after the Motions were filed. 6:13CV447, Doc. No. 366; 6:13CV448, Doc. No. 408.

**BACKGROUND**

Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash") filed these actions against Apple, Inc. ("Apple"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC (collectively "Samsung"), HTC Corporation, HTC America, Inc., and Exedea, Inc. (collectively "HTC") (collectively "Defendants") alleging infringement of the following patents: U.S. Patent No. 7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772.

Smartflash hired Mr. Mills as an expert on damages. Mr. Mills based portions of his damages calculations on surveys conducted by Dr. William Wecker. Smartflash hired Dr. Wecker, a statistician, to conduct four surveys related to consumer purchasing decisions of the accused products: (1) an "App Store" survey; (2) a "Movies and TV Shows" survey; (3) a "Music" survey; and (4) a "Books and Parental Controls" survey. Each of the surveys asked consumers if certain features "motivated" them to purchase accused products.

**APPLICABLE LAW**

An expert's testimony is admissible if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. Further, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FED. R. EVID. 403.

*Damages*

The damages statute, 35 U.S.C. § 284, sets the floor for "damages adequate to compensate for [patent] infringement" at "a reasonable royalty for the use made of the invention by the infringer." A reasonable royalty is based on a hypothetical negotiation that takes place between the patentee and the infringer on the date infringement began. *Unisplay, S.A. v. American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995). "Although this analysis necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty." *Id.* The trial court has discretion to discern the reliability of methods used to arrive at a reasonably royalty. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991) ("[D]ecisions underlying a damage theory are discretionary with the court, such as, the choice of an accounting method for determining profit margin, or the methodology for arriving at a reasonable royalty.") (internal citations omitted).

## DISCUSSION

*Mills's Testimony*

Defendants essentially raise two grounds for excluding Mr. Mills's testimony: (1) improperly using the entire market value rule; and (2) improperly referencing information related to Apple.

**A. Entire Market Value Rule**

Defendants assert that Mr. Mills improperly included the entire market value of the accused devices where the patented feature was clearly not the sole motivator of purchase. 6:13CV447, Doc. No. 279 at 4–5 (citing *LaserDynamics, Inc. v. Quanta Computer*, 694 F.3d 51, 67–68 (Fed. Cir. 2012). According to Defendants, the claimed invention relates to only one of

hundreds of features of the accused smartphones and tablets and was not even marketed. *Id.* at 6. Dr. Wecker's surveys asked if the feature "motivated" respondents to purchase, but it did not ask if the feature was the "only" or even a "significant" motivation for purchase. *Id.* at 7. Defendants characterize Mr. Mills as calculating the royalty base by multiplying (1) the share of survey respondents who said the infringing feature "motivated" them to buy the accused device, and (2) the revenues of those devices. *Id.* at 4. Defendants note that Mr. Mills did not apportion between the contributions of patented features and other features. *Id.* at 11.

Smartflash responds that Mr. Mills properly calculated damages by (1) apportioning the total number of accused units by the percentage of users who purchased the device because of the accused features; (2) multiplying that number of units by average revenue per accused device in order to get the royalty base; and (3) multiplying the apportioned base times the royalty rate. 6:13CV447, Doc. No. 286 at 2. Smartflash points out that Mr. Mills included only a small subpopulation of accused product sales, seeking zero dollars for 80–90% of accused devices. *Id.* 2–3. According to Smartflash, if multiple features motivated a survey respondent to buy an accused device, the truthful answer to the "motivate" question would be "no." *Id.* at 6.

Smartflash's argument that survey respondents understood "motivate" to mean that the accused features were the sole motivator of their purchase fails and cannot support Mr. Mills's damages calculations. "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67. "[T]he requirement to prove that the patented feature drives demand for the entire product may not be avoided by the use of a very small royalty rate." *Id*. Even though Smartflash seeks damages for only a subpopulation of the accused products, for that

4

subpopulation, Mr. Mills assumed the patented features alone motivated the purchasers. Mr. Mills based this assumption on affirmative survey responses to questions asking if the patented capabilities "motivate[d] [consumers] to buy the device." *E.g.* Mills HTC Rpt. 93–96. One example of such a question is reproduced here:

> Q5 For each device listed below, did the capability to **rent** or **download** (which allows viewing whether or not you have an internet connection) movies and TV shows from iTunes or Google Play motivate you to buy the device?
>
> 01 Yes
> 02 No
> 03 Maybe
>
> A. Apple iPhone
> B. Apple iPad
> C. Apple iPod Touch
> D. Apple desktop computer (e.g., iMac, Mac Pro)
> E. Apple laptop computer (e.g., MacBook Pro, MacBook Air, Powerbook)
> F. Android-based smart phone
> G. Android-based tablet

Wecker Rpt. H.3 (emphasis in original) (survey formatting instructions removed)

Affirmative responses are insufficient evidence to show that the patented feature alone motivated survey respondents to purchase the accused devices because the questions did nothing to distinguish those features as the sole motivating factor. *See LaserDynamics*, 694 F.3d at 69. Mr. Mills admitted that he did not apportion between the contribution of the patents and other complementary assets in the accused devices. Mills Dep. 170:16–171:4, Sept. 25, 2014. Therefore, Mr. Mills's damages calculations based on the accused features as the sole motivating purchase factor are flawed and must be excluded.

### B. References to Apple

Defendants also object to Mr. Mills's references to cases that do not involve all Defendants, such as referencing Apple in the 6:13CV448 case ("the Samsung case") and

5

applying Mr. Mills's related opinions to Samsung and HTC. 6:13CV447, Doc. No. 279 at 12. According to Defendants, Mr. Mills referenced Apple's state of mind, its marketing efforts, and the importance of various features of its devices to its customers. *Id.* Defendants also assert that Mr. Mill's references to Apple and Samsung litigation is unrelated to this case. *Id.* Additionally, Defendants take issue with Mr. Mills's use of the Licensing Executive Survey, asserting the licenses surveyed do not sufficiently compare to the hypothetically negotiated license. *Id.* at 13 (citing *LaserDynamics*, 694 F.3d at 80).

Smartflash asserts that Defendants attempt to rehash their earlier Motion to Strike by objecting to Mr. Mills's references to Apple in the Samsung case. 6:13CV447, Doc. No. 286 at 11. Smartflash points out that the Court previously denied that Motion, and it argues that the information is relevant to show Apple's state of mind and how, as their biggest competitor, its success with the accused features influenced the actions of HTC and Samsung. *Id.* As to the Licensing Executives Survey, Smartflash contends that Mr. Mills only considered the survey in relation to the form of the royalty (a lump sum versus a royalty rate) *Id.* at 13.

The remaining portions of Mr. Mills's testimony are admissible. The court previously allowed references to Apple in the Samsung case when it denied Defendants' Motion to Strike.[2] Defendants' arguments regarding Mills's Apple references go to the weight of the evidence, not the admissibility. Further, Mr. Mills's use of the Licensing Executive Society Survey when discussing the form of the royalty is also an issue of evidentiary weight.

---

[2] Samsung and HTC previously moved to strike potions of Mr. Mills's report that relied on Apple's confidential information, asserting that Smartflash abused the protective order by providing redacted expert reports to Defendants in the Samsung case. *See* 6:13CV448, Doc. No. 236.

*Survey Evidence*

Defendants move for exclusion of the survey evidence based on alleged methodological flaws including insufficient pretesting, a lack of survey clarity, and improper survey sample and focus.

Defendants assert that the *Daubert* factors require exclusion of Dr. Wecker's four surveys because (1) the questionnaires could have been but were not pre-tested, (2) surveys without pretesting have been subjected to peer review and found uniformly unreliable, (3) it is known that conducting surveys without pretesting has a high rate of error, and (4) conducting surveys without pretesting is generally not accepted in the field. 6:13CV447, Doc. No. 280 at 8–9 (citing *Pipitone v. Biomatrix*, 288 F.3d 239, 244 (Fed. Cir. 2002)). Defendants contend that Dr. Wecker did not appropriately pretest the surveys because he only performed pretesting on the "App Store" survey and did not clarify the meaning of the "motivation" questions. *Id*. at 11–12. Defendants further contend that the surveys failed Dr. Wecker's own standard for clarity because the final surveys resulted in similarly high rates of "Don't know" responses as pretest questions that he saw fit to revise. *Id.* at 13–14. Finally, Defendants object that Dr. Wecker surveyed only "regular users" instead of all "purchasers" of accused devices and improperly influenced respondents by focusing them on the single-tested feature. *Id.* at 15.

In response, Smartflash argues that alleged methodological flaws should bear on the weight a survey should receive, not the survey's admissibility. 6:13CV447, Doc. No. 290 at 3 (citing *Scott Fetzer v. House of Vacuums*, 381 F.3d 477, 488 (5th Cir. 2004); *Honestech Inc. v. Sonic Solutions*, 430 Fed. App'x 359, 364 (5th Cir. 2011). Moreover, Smartflash asserts that the single pretest was sufficient because all four surveys had similar design and similarly worded questions. *Id.* at 6. As to the clarity of the surveys, Smartflash maintains that Dr. Wecker did

improve the surveys after pretesting and that "Don't know" survey responses do not correlate with confusion. *Id.* at 7–9. Smartflash contends that Defendants provide no support for why "purchasers" should have been surveyed as opposed to "regular users" or the why it was improper that the survey focused on the single-tested feature. *Id.* at 9–11 (citing *Honestech*, 430 Fed. App'x at 362 (stating that a survey sample should reflect "fair sampling of purchasers most likely to partake of the alleged infringer's goods or services")).

Defendants' attacks on Dr. Wecker's survey methodology do not justify excluding the survey evidence. Defendants do not dispute that Dr. Wecker did conduct some pretesting, testing one of four surveys that, in his opinion, were substantially similar. Defendants' assertions that the other three surveys are too dissimilar to model after the one that Dr. Wecker pretested goes to the weight of the survey evidence. Further, Dr. Wecker's failure to clarify the "motivation" questions does not justify excluding all survey evidence because the Court excludes Mr. Mills's damages calculations based on the assumption that the patented features alone motivated purchasers. Defendants' other arguments related to the survey methodology similarly go to the weight of the survey evidence, not its admissibility.

## CONCLUSION

Mr. Mills's flawed application of the entire market value rule requires the Court to exclude his reasonable royalty testimony. All other portions of his testimony are admissible. Additionally, the purported flaws in the survey evidence properly affect the weight of the evidence, not the admissibility. Accordingly, Defendants' Motions to Exclude Robert Mills Expert Opinion Testimony (6:13CV447, Doc. No 279; 6:13CV448, Doc. No 329) are **GRANTED-IN-PART** and **DENIED-IN-PART,** and the sections (Parts VIII) related to Game

Circus LLC alone are **DENIED** as moot.[3] Defendants' Motions to Exclude Expert Opinion Testimony Related to Surveys (6:13CV447, Doc. No 280; 6:13CV448, Doc. No. 330) are **DENIED**.

It is further **ORDERED** that Plaintiffs shall have leave to amend its expert reports in accordance with this Order and shall resubmit them within fifteen days.

So ORDERED and SIGNED this 23rd day of December, 2014.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[3] Game Circus LLC has been dismissed from the case. 6:13CV447, Doc. No. 372; 6:13CV448, Doc. No. 414.