**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| SMARTFLASH LLC and SMARTFLASH TECHNOLOGIES LIMITED, | ) ) ) ) | Case No. 6:13-cv-00448-JRG-KNM |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| SAMSUNG ELECTRONICS CO., LTD, et al, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) | |

**DEFENDANTS' CORRECTED MOTION FOR RECONSIDERATION OF THE
COURT'S ORDER (DKT. 396) ADOPTING MAGISTRATE'S REPORT AND
RECOMMENDATION REGARDING CLAIM CONSTRUCTIONS AND DENYING
SUMMARY JUDGMENT ON INDEFINITENESS (DKT. 274) IN VIEW OF THE
FEDERAL CIRCUIT'S DECISION IN *WILLIAMSON V. CITRIX ONLINE***

On June 16, 2015, the Federal Circuit in *Williamson v. Citrix Online, LLC*, No. 2013-1130, — F.3d —, 2015 WL 3687459 (Fed. Cir. June 16, 2015) (*en banc*), determined that claim terms referring to a "module" for performing recited software functions were means-plus-function claim terms governed by §112, ¶6, based in part on a determination that "module" was a well-known, generic nonce word description of "software or hardware that performs a specified function."  In agreeing that the defendant had rebutted the presumption against applying §112, ¶6 to claim terms that do not recite the word "means," an *en banc* Federal Circuit expressly overturned prior decisions that had characterized that presumption as "strong," and that required "a showing that the limitation essentially is devoid of anything that can be construed as structure."  *Williamson*, 2015 WL 3687459  at *7.   In view of *Williamson*, Defendants [1] respectfully request that this Court reconsider its prior order (Dkt. 396) declining to apply §112, ¶6 to asserted claim limitations that, in a format consistent with traditional means-plus-function claim limitations, do no more than claim a general purpose processor implementing unspecified software "code" to perform special computer-implemented functions (and denying summary judgment of indefiniteness on those grounds).   The Court's prior order must be reconsidered because: (1) it expressly required Defendants to overcome a "strong presumption" standard that the Federal Circuit has now abandoned, and (2) before the Federal Circuit's *en banc* guidance in *Williamson*, it erroneously determined that the "code to" limitations in the asserted claims created sufficient structure to avoid the application of §112, ¶6.  With the benefit of the *en banc Williamson* controlling precedent, it is clear that claims directed to generic software "code" to perform particular functions using a general purpose processor are means-plus-function limitations subject to the provisions of §112, ¶6.

---

[1]  "Defendants" refers to Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., LLC, HTC Corporation, HTC America, Inc., and Exedea, Inc.

Additionally, based on the analytical guidance of *Williamson,* where the Federal Circuit has now made clear that the Court is to analyze the threshold applicability of §112, ¶6 to nonce word claim limitations (such as those using the term "code" here) without regard to the particular functions recited in the claim, Defendants request that the Court apply §112, ¶6 to construe all of the functional "code" limitations in the currently asserted claims, and to find those limitations indefinite for failure to satisfy the requirements of §112, ¶2.   Defendants have submitted concurrently with this motion the declaration of their technical expert Dr. Andrew Wolfe (hereinafter, the "Wolfe Decl."), who explains why the patent specification fails to disclose a sufficiently detailed algorithm for performing the recited function for each "code" limitation in the asserted claims.[2]

## A.   In *Williamson*, The Federal Circuit Abandoned The Heightened "Strong Presumption" Standard That This Court Applied In Declining To Apply §112,¶6 To The "Code" Claim Limitations

Defendants previously moved the Court to find that §112, ¶6 should apply to certain "processor control code" and "code...to [perform recited functions]" limitations that were recited in a means-plus-function format, and also to rule that a subset of these means-plus-function limitations were invalid because the specifications of the patents-in-suit failed to sufficiently disclose corresponding structure as required by §112, ¶2.   (Dkt. 177).   For each of these computer-implemented claim limitations, §112, ¶6 governs because the asserted claims provide only the nonce word "code" to refer to unspecified software that instructs a general purpose processor to perform the recited software function.

---

[2]   Since the time of Defendants' original Motion for Summary Judgment of Indefiniteness (Dkt. 177), Smartflash has reduced the set of asserted claims to eight claims: '720 patent, claim 14; '458 patent, claim 11; '598 patent, claim 7; '221 patent, claims 2 and 11; and '772 patent, claims 5, 10 and 14.

Prior to *Williamson,* where a patentee did not include the term "means" in a functional claim limitation, certain Federal Circuit decisions required Defendants to overcome a "'strong' presumption ... 'not readily overcome'" for §112, ¶6 to apply to the limitation.  (Dkt. 396 at 3) (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004); *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367 (Fed. Cir. 2012); *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1297–98 (Fed. Cir. 2014)); Dkt. 274 at 32– 33 (citing *Lighting World*, 382 F.3d at 1359–60).

On December 4, 2014, Judge Schneider issued an order (Dkt. 396, the "§112 Order") adopting the Report and Recommendation of Magistrate Judge Mitchell (Dkt. 274, the "§112 R&R") which: (1) declined to apply §112, ¶6 to these "code...to [perform recited functions]" limitations; and, for that reason, (2) denied summary judgment of invalidity of indefiniteness.  In its §112 Order, the Court expressly relied on the now-overruled "strong presumption" standard set forth in the *Lighting World*, *Flo Healthcare*, and *Apple* decisions, reasoning that the Federal Circuit has "repeatedly characterized this presumption as 'strong' and 'not readily overcome' and, as such, ha[s] 'seldom' held that a limitation without recitation of 'means' is a means-plus-function limitation."  (Dkt. 396 at 3, citing *Lighting World*, *Flo Healthcare*, and *Apple.*)  The Court also found that, in recommending denial of Defendants' summary judgment motion, the Magistrate relied on the "strong presumption" against applying §112, ¶6 where claims do not recite 'means.'"  (Dkt. 396 at 9; *see also* Dkt. 274 at 32 ("The presumption flowing from the absence of the term 'means' is a ***strong one that is not readily overcome***."), at 34 (citing *Flo Healthcare:* "we are unwilling to apply [§112,¶6 in the absence of the term means] without a showing that ***the limitation essentially is devoid of anything that can be construed as structure***.") (emphasis added).   In its §112 Order, the Court ultimately declined to apply

§112, ¶6, concluding that "Defendants failed to overcome the ***strong presumption*** that §112, ¶6 does not apply." (Dkt. 396 at 8).

This is no longer the law. In *Williamson*, the *en banc* Federal Circuit held that the "heightened burden" of the "strong presumption" was "unjustified," "unwarranted [and] uncertain in meaning and application, and ha[d] the inappropriate practical effect of placing a thumb on what should otherwise be a balanced analytical scale." *Williamson*, 2015 WL 3687459, at *6–7. Because the strong presumption had "shifted the balance struck by Congress in passing §112, ¶6 and ha[d] resulted in a proliferation of functional claiming untethered to §112, ¶6 and free of the strictures set forth in the statute" the Court expressly overruled the strong presumption standard set forth in *Lighting World*, *Flo Healthcare*, *Apple*, and their progeny. *Id*. The Federal Circuit also overruled "the ***strict requirement*** of a 'showing that ***the limitation essentially is devoid of anything that can be construed as structure*.'" *Id.* at *7, quoting *Flo Healthcare* (emphasis added).

The Magistrate's §112 R&R expressly recited both the now-rejected "strong presumption" and "essentially devoid of anything" standards, and relied on them to hold that the disputed terms "need not be construed." (Dkt. 274 at 34-35.) In adopting the Magistrate's §112 R&R, the Court's §112 Order expressly noted that the Magistrate's reasoning followed the "strong presumption" precedent against applying §112, ¶6. (Dkt. 396 at 9.) Moreover, the Court's stated basis for adopting the Magistrate's §112 R&R was Defendants' failure to "overcome the strong presumption" that §112, ¶6 does not govern software-centric "code" limitations. *Id.* In view of the Federal Circuit's *en banc* decision to overrule both the "strong presumption" and "essentially devoid of anything" requirements, Defendants respectfully request

4

that the Court reconsider its prior rulings regarding whether §112, ¶6 should apply to the "code" limitations in this case.

      **B.**    *Williamson* **Makes Clear That §112, ¶6 Governs Functional Software Limitations, Such As "Code To" Perform A Function, That Are Written In Means-Plus-Function Format**

           **1.**    *Williamson's Analysis Of Nonce Words Used In Means-Plus-Function Format*

In addition to the Federal Circuit's *en banc* decision to overrule these heightened standards, *Williamson* provides this Court with controlling precedent that confirms that software nonce terms (such as "module" or "code") provide inadequate structure to avoid the application of §112, ¶6 to computer-implemented "code" claim limitations such as those asserted here.

The correct test, as articulated in *Williamson,* is that a claim term lacking the word "means" will nevertheless be construed as a means-plus-function term "if the challenger demonstrates that the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 2015 WL 3687459, at *6 (quoting Watts *v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). As demonstrated by the Federal Circuit's application of this standard in *Williamson* to the "module" limitations, the "code" limitations in the asserted claims are equally non-structural as they do not recite "sufficient structure for performing" the claimed software functions (as confirmed by the testimony of Defendants' technical expert). *See* Wolfe Decl. at ¶¶ 41-47.

The question presented to the *Williamson* court was whether §112, ¶6 should apply to the phrase "distributed learning control module for receiving…and for relaying…and for coordinating…." *Williamson* at *8. The Court first noted that even where a limitation omits the term "means," the Court has not "blindly elevated form over substance when evaluating whether a claim limitation invokes §112, ¶6." *Id.* at *6, citing *Cole v. Kimberly–Clark Corp.*, 102 F.3d

524, 531 (Fed. Cir. 1996) ("merely because an element does not include the word 'means' does not automatically prevent that element from being construed as a means-plus-function element."); *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996) ("We do not mean to suggest that section 112(6) is triggered only if the claim uses the word 'means.'"). The Court determined that the "distributed learning control module" limitation simply replaced the term "means" with the term "module" in a "format consistent with traditional means-plus-function claim limitations" because it recited a "module" followed by a description of the "three functions performed" by the module instead of a description of the module itself. *Id*. at *8.

The *en banc Williamson* court held that the recitation of a bare "module"—or of even a "distributed learning control module"—did not provide structure for performing these claimed software functions. Noting that a "module" is "simply a generic description for software or hardware that performs a specified function," the Federal Circuit determined that "module" is no more than a nonce word "that can operate as a substitute for 'means' in the context of §112, ¶6." *Id*. According to the Federal Circuit, such nonce words "may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke §112, ¶6." *Id.*, quoting *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006). In the Court's determination, "module" provide no indication of structure because "it sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used." *Id*. at *8.

After determining that neither the prefix "distributed learning control," nor anything in the specification or prosecution history, provided any structural significance to the term "module," the Court next addressed plaintiff's expert's opinion that "distributed learning control

6

module" connoted structure because one of ordinary skill, reading the specification, would know how to program a computer to perform the recited functions. *Id*. at *9. The Federal Circuit rejected this argument entirely, and based on its determination that "module" did not recite sufficiently definite structure, found that the presumption against means-plus-function claiming was rebutted. "[The] fact that one of skill in the art could program a computer to perform the recited functions *cannot create structure where none otherwise is disclosed*. *See Function Media, L.L.C. v. Google, Inc*., 708 F.3d 1310, 1319 (Fed. Cir. 2013)." *Id*. (emphasis added).

### 2.     *Application of Williamson To The Functional "Code" Limitations*

*Williamson* therefore provides controlling guidance for why the generic "code to [perform recited functions]" limitations at issue here do not recite sufficient structure to avoid application of §112, ¶6. For example, one of the claim limitations of asserted claims (in claim 11 of the '458 patent) recites "code to evaluate the use status data and use rules data to determine whether access is permitted to the stored data." '458 patent, 27:44-22. There is no question that, similar to the "module" limitation in *Williamson*, this limitation of claim 11 is set forth in traditional means-plus-function format, with the term "means for" simply replaced with the phrase "code to." As in *Williamson*, the "code to" claim limitations in the asserted claims are *functionally* drafted in traditional means-plus-function format.

As in *Williamson*, the term "code" is a nonce word. The Federal Circuit determined in *Williamson* that "module" was a nonce word because it was "simply a generic description for software or hardware that performs a specified function." 2015 WL 3687459, at *8. There can hardly be a more "generic description for software…that performs a specified function" than a limitation that recites "code to" perform a specified function. Under *Williamson*, the term "code" is therefore a "nonce word" that substitutes for the term "means." *See* Wolfe Decl., at ¶41 ("For nearly all of the identified claims, the functions are expressed as limitations specifying

7

'code' to perform the function, which is no more informative to a person of ordinary skill in the art than a limitation specifying 'means for' performing the function.").

There is also no disagreement that, identical to the nonce term "module" in *Williamson*, the term "code" simply describes ***software that performs a specified function.*** *See* Smartflash's Response to Defendants' Summary Judgment Motion (Dkt. 187 at 8) (agreeing that the specification describes the claimed processor as "a device used to implement computer code.") And this Court's §112 Order noted Defendants' expert's opinion that the claimed general purpose processor is simply hardware designed to run software. *See* Dkt. 396 at 6 ("A general purpose processor of the type available for purchase during the relevant time period (or, for that matter, available for purchase now) is designed to interpret and execute instructions that are provided to it as compiled machine code.") As such, "code" is no more than a nonce term that fails to provide sufficient structure for performing the claimed function.

The clear import of *Williamson* is that any word—such as "module"—can be a nonce word if it is "simply a generic description for software or hardware that performs a specified function." *Williamson*, 2015 WL 3687459 at *8. Because there is no more "generic description for software" than the claim term "code," this Court should find under the guidance of *Williamson* that §112, ¶6 governs the generic "code" limitations in the asserted claims.

### C.   *Williamson* **Rejects The Notion That A Processor Connotes Sufficient Structure Because One Of Ordinary Skill In The Art Could Write A Program To Perform The Claimed Function**

Some of the asserted claims recite that the "code to" limitations are performed by a "processor." The inclusion of a generic processor in the claim does not impart structure into the term "code." "[A] microprocessor can serve as structure for a computer-implemented function only where the claimed function is 'coextensive' with a microprocessor itself." *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 622 (Fed. Cir. 2015) (limiting coextensive

functions of a microprocessor to basic functions of "receiving" data, "storing" data, and "processing" data).   While the issue in *EON Corp.* was whether the claim language or specification provided sufficient structure for a computer-implemented claim limitation already determined to be subject to §112, ¶6, the Federal Circuit's decision in *Williamson* makes clear that the programming abilities of one of ordinary skill is equally irrelevant to determining the threshold question of whether to apply §112, ¶6 to a computer-implemented claim.   Where the limitation uses a nonce term to create a black box recitation of unspecified structure for performing a claimed software function, the patentee cannot rely on the skill and knowledge of a skilled computer programmer to avoid application of the means-plus-function statute to this term. *See Williamson* at *9.   It makes no difference for purposes of §112, ¶6 whether the claimed processor in the asserted claims could conceivably perform any software function it is programmed to perform.   Without disclosure in the claim of a specific algorithm that performs the recited function, a generic "processor programmed by code" limitation "would diminish[] the definiteness requirements' public-notice function," and "does nothing to limit the scope of the claim and 'avoid pure functional claiming.'"   *EON Corp.*, 785 F.3d at 623, citing *Nautilus, Inc. v. Biosig Instruments, Inc.,* -- U.S. --, 134 S.Ct. 2120, 2130 (2014).   *See also* Wolfe Decl. at ¶¶ 42-46.

Williamson similarly rejects the notion that the asserted generic "code" limitations can avoid application of §112, ¶6 by simply relying on the knowledge and ability of a skilled programmer. *Williamson* at *9.   That one of ordinary skill in the art would recognize the terms "processor" and "code," and be able to draw from their own knowledge to write a computer program to perform the claimed software function, does not change the analysis, for as

*Williamson* clearly confirms, "the fact that one of skill in the art could program a computer to perform the recited functions ***cannot create structure where none otherwise is disclosed***." *Id.*

Any argument that the inclusion of a generic "processor" in the asserted claims provides sufficient structure should be rejected. *Williamson* expressly acknowledges that the "module" limitations at issue there were directed to "software." It is well-known that software is implemented on a "processor."[3] The inclusion of a generic "processor" limitation in *Williamson* therefore would not have provided the necessary structure to avoid means-plus-function claiming.

Applying *Williamson* to the exemplary "code" limitation from claim 11 of the '458 patent, the correct analysis cannot rely on the expertise of a skilled computer programmer to fill the structural gaps created by the use of the "code" nonce term used in a means-plus-function claim format. Because there is nothing in the claim language that provides sufficient structure for performing the recited function of "evaluating…to determine whether access is permitted," §112, ¶6 governs the construction of this limitation. *See* Wolfe Decl. at ¶¶ 50-74.[4]

---

[3]   *See Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1340 (Fed. Cir. 2014) ("To function, a computing device requires both hardware and software. Processors are hardware components embedded in computing devices. The central processing unit ("CPU") enables a computing device to carry out instructions contained in a computer program. Software refers to instructions that tell the device hardware what to do. The hardware then follows these instructions ('executes' the software).").

[4]   In this regard, the pre-*Williamson* district court decisions that the §112 R&R relied on to conclude that "code" is not a generic term are contrary to the holding of *Williamson* and are wrongly decided. *See, e.g.*, Dkt. 274 at 34-35 (citing *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2006 WL 3147697, at *11-13 (N.D. Ill. Oct. 31, 2006), where the court concluded that the phrase "program code" conveyed sufficient structure to avoid application of §112, ¶6 because those skilled in the art "were either able to develop plaintiff's (or another's) program codes, or develop their own").

**D.    In View Of *Williamson* and *EON Corp.*, This Court Should Find That §112, ¶6 Governs The Asserted Claim Limitations, And That These Limitations Are Indefinite Under §112, ¶2**

*Williamson* has now overturned the heightened "strong presumption" standard that Defendants' arguments were measured against last year.  Moreover, *Williamson* teaches that §112, ¶6 governs the "code to" and "processor…implementing…code" limitations at issue here because these limitations do nothing but simply set forth a black box recitation of some unprogrammed structure for performing the claimed functions as if the term "means" had been used.  Taken together, the Federal Circuit's decisions in *Williamson* and *EON Corp.* provide controlling precedent that, not only does §112, ¶6 apply to the "code" limitations, but a computer or processor is insufficient structure for performing a computer-implemented software function for all but the most basic of "co-extensive" microprocessor functions.  *See EON Corp.,* 785 F.3d 623 (Because disclosure of a general purpose computer or microprocessor "as corresponding structure for a software function does nothing to limit the scope of the claim and 'avoid pure functional claiming[,] when a patentee invokes means-plus-function claiming to recite a software function, it accedes to the reciprocal obligation of disclosing a sufficient algorithm as corresponding structure."); *Williamson,* 2015 WL 3687459, at *10 (Where the specification makes clear that the claimed "module" must be implemented on "a general purpose computer programmed to perform particular functions pursuant to instructions from program software," §112, ¶6 requires the structure to be "more than simply a general purpose computer or microprocessor.  We require that the specification disclose an algorithm for performing the claimed function.") (citations omitted).

Defendants therefore respectfully request that the Court reconsider its prior decision on §112,¶6, as it rests on an antedated view of the law.  Specifically, Defendants request that the Court (1) determine that under *Williamson*, §112, ¶6 governs the construction of each of the

11

"code" limitations of the remaining asserted apparatus claims; (2) construe each of these "code" limitations under §112, ¶6, and (3) under the guidance of *Williamson* and *EON Corp.*, find that each of the asserted "code" limitations are indefinite under §112, ¶2 for failure of the patent specification to disclose a sufficiently definite algorithm for performing the recited software functions.  In support of their request, Defendants have submitted concurrently with this motion the Declaration of Dr. Andrew Wolfe, one of Defendants' technical experts, that sets forth Dr. Wolfe's detailed opinion as to why each "code" limitation fails to disclose the required algorithm for performing the recited functions.  *See id.* at ¶¶ 48-49.  As Dr. Wolfe's declaration shows, the specification fails to disclose a sufficiently detailed algorithm to one of ordinary skill in the art for performing the claimed function of any of the asserted "code" limitations.  Defendants request that the Court find that the asserted apparatus therefore are indefinite under §112, ¶2.  Identified in the table below are each of the asserted "code" limitations, and the corresponding citation to Dr. Wolfe's declaration providing his opinion regarding each limitation.

| **Claim Term Governed By §112, ¶6** | **Support From Record** |
|---|---|
| code to retrieve use status data indicating a use status of data stored on the carrier, and use rules data indicating permissible use of data stored on the carrier ('458 patent claim 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 50-55. |
| code to evaluate the use status data using the use rules data to determine whether access is permitted to the stored data ('458 patent claim 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 56-61. |
| code to access the stored data when access is permitted ('458 patent claim 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 62-68. |
| code to write partial use status data to the data carrier when only part of a stored data item has been accessed ('458 patent claim 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 69-74. |
| code for storing at least one content data item in the content data memory and at least one use rule in the use rule memory ('598 patent claim 7) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 75-79. |
| code to provide the payment data to a payment validation system ('598 patent claim 7) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 80-84. |

| **Claim Term Governed By §112, ¶6** | **Support From Record** |
|---|---|
| code to read payment data from the data carrier and to forward the payment data to a payment validation system ('221 patent claims 2, 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 85-89. |
| code to receive payment validation data from the payment validation system ('221 patent claims 2, 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 90-94. |
| code responsive to the payment validation data to retrieve data from the data supplier and to write the retrieved data into the data carrier ('221 patent claims 2, 11) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 95-99. |
| code to transmit at least a portion of the payment validation data to the data supplier or to a destination received from the data supplier ('221 patent claim 2) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 100-104. |
| code to request identifier data identifying one or more items of multimedia content stored in the non-volatile memory ('772 patent claim 5) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 105-109. |
| code to request identifier data identifying one or more content data items stored on the data carrier ('772 patent claim 10) | |
| code to receive said identifier data ('772 patent claims 5, 10) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 110-114. |
| code to present to a user on said display said identified one or more items of multimedia content available from the non-volatile memory ('772 patent claim 5) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 115-119. |
| code to present to a user via said user interface said identified one or more content data items available from the data carrier ('772 patent claim 10) | |
| code to receive a user selection to select at least one of said one or more of said stored items of multimedia content ('772 patent claim 5) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 120-124. |
| code to receive a user selection selecting at least one of said one or more of said stored content data items ('772 patent claim 10) | |
| code responsive to said user selection of said at least one selected item of multimedia content to transmit payment data relating to payment for said at least one selected item of multimedia content via said wireless interface for validation by a payment validation system ('772 patent claim 5) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 125-129. |
| code responsive to said user selection of said selected content data item to transmit payment data relating to payment for said selected content item for validation by a payment validation system ('772 patent claim 10) | |
| code to receive payment validation data via said wireless interface defining if said payment validation system has validated payment for said at least one selected item of multimedia content ('772 patent claim 5) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 130-134. |
| code to receive payment validation data defining if said payment validation system has validated payment for said content data item ('772 patent claim 10) | |
| code to control access to said selected content data item responsive to the payment validation data ('772 patent claim 10) | These limitations are indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 135-139. |
| code to control access to said at least one selected item of multimedia content on said terminal responsive to said payment validation data ('772 patent claim 5) | |

| Claim Term Governed By §112, ¶6 | Support From Record |
|---|---|
| code to retrieve supplementary data via said wireless interface and output said supplementary data to said user using said display ('772 patent claim 10) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 140-144. |
| code to request identifier data identifying one or more items of multimedia content available for retrieving via said wireless interface ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 145-149. |
| code to receive said identifier data via said wireless interface, said identifier data identifying said one or more items of multimedia content available for retrieving via said wireless interface ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 150-154. |
| code to request content information via said wireless interface, wherein said content information comprises one or more of description data and cost data pertaining to at least one of said one or more items of multimedia content identified by said identifier data ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 155-159. |
| code to receive said content information via said wireless interface ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 160-164. |
| code to present said content information pertaining to said identified one or more items of multimedia content available for retrieving to a user on said display ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 165-169 |
| code to receive a user selection selecting at least one of said one or more items of multimedia content available for retrieving ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 170-174. |
| code responsive to said user selection of said selected at least one item of multimedia content to transmit payment data relating to payment for said selected at least one item of multimedia content via said wireless interface for validation by a payment validation system ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 175-179. |
| code to receive payment validation data via said wireless interface defining if said payment validation system has validated payment for said selected at least one item of multimedia content ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 180-184. |
| code responsive to said payment validation data to retrieve said selected at least one item of multimedia content via said wireless interface from a data supplier and to write said retrieved at least one item of multimedia content into said non-volatile memory ('772 patent claim 14) | This limitation is indefinite under §112, ¶2. *See* Wolfe Decl. at ¶¶ 185-189. |

### E.   Defendants Request An Expedited Briefing Schedule And Hearing

The pre-trial conference in the present case is currently scheduled for July 7, with trial to commence on August 3.   The application of §112, ¶6 to the asserted claims, as required by *Williamson*, and an ultimate finding of indefiniteness, will significantly alter the nature and scope of Smartflash's case.   Should the Court determine that §112, ¶6 governs these claims, it will also need to issue a supplemental claim construction order (at least for those means-plus-

14

function claim limitations not found to be indefinite). Defendants understand that, on July 1, 2015, in the co-pending *Smartflash v. Apple* case (6:13-cv-447-JRG), the Court intends to take up oral argument to discuss the impact of the *Williamson* decision to the Smartflash claim constructions. ('447 Case, Dkt. 576) Because the Court's determination on this issue in the '447 Case may directly impact the scope of the present case, Defendants request an expedited briefing schedule for this motion, with Smartflash's opposition due on July 6, Defendants' reply due on July 8, and Smartflash's sur-reply due on July 9. In addition, Defendants respectfully request that (1) the Court set an expedited hearing schedule so that the parties may be heard on this issue; and (2) the Court not issue its order as to the impact of *Williamson* and *EON Corp.* across both cases until after briefing and a hearing on this issue are completed in this case.

Dated: June 30, 2015                     Respectfully Submitted,


By:   */s/ Melissa J. Baily* (w/ permission)
Melissa J. Baily CA Bar. No. 237649
(Eastern District of Texas Member)
melissabaily@quinnemanuel.com
Andrew M. Holmes
CA Bar. No. 260475
(Eastern District of Texas Member)
drewholmes@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com

**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**ATTORNEY FOR DEFENDANT,
SAMSUNG ELECTRONICS CO., LTD.;
SAMSUNG ELECTRONICS AMERICA,
INC.; AND SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC**

By: */s/ Philip A. Morin* (w/ permission)
John P. Schnurer, Lead Attorney
Texas State Bar No. 24072628
jschnurer@perkinscoie.com
Philip A. Morin
California State Bar No. 256864
pmorin@perkinscoie.com
Yun Louise Lu
California State Bar No. 253114
llu@perkinscoie.com
**Perkins Coie LLP**
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
Tel: 858-720-5700
Fax: 858-720-5799

Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
**Wilson, Robertson & Cornelius, P.C.**
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092

**ATTORNEY FOR DEFENDANTS
HTC CORPORATION, HTC AMERICA,
INC. AND EXEDEA, INC.**

By: */s/ Melissa J. Baily* (w/ permission)
Melissa J. Baily

16

CA Bar. No. 237649
(Eastern District of Texas Member)
melissabaily@quinnemanuel.com
Andrew M. Holmes
CA Bar. No. 260475
(Eastern District of Texas Member)
drewholmes@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
50 California Street, 22nd Floor San Francisco,
CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

**ATTORNEY FOR DEFENDANTS HTC
CORPORATION AND HTC AMERICA,
INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Jordan B. Kaericher*
Jordan B. Kaericher
